UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE OAKLAND PHYSICIANS MEDICAL CENTER, L.L.C.** | 2:19-cv-12101 |
| **MICHAEL J. SHORT**, | HON. TERRENCE G. BERG |
| Appellant, | |
| v. | **ORDER AFFIRMING BANKRUPTCY COURT'S ORDER ON SUMMARY JUDGMENT** |
| **BASIL SIMON**, | |
| Appellee. | |

In this bankruptcy case, the Trustee (Plaintiff-Appellee Basil Simon) prevailed on several claims brought in an adversarial proceeding against Defendant-Appellant Michael J. Short ("Short"). The claims pertained to multiple transfers of money from Debtor to Short before Debtor filed for bankruptcy. Short argued the transfers were repayment for his prior advances to Debtor, which Short characterized as loans. Trustee contended that Short's advances to Debtor were capital contributions, not loans, so Debtor was not obligated to repay Short. Accordingly, Trustee argued, Debtor's transfers to Short before Debtor filed for bankruptcy can be avoided and recovered by Trustee. The bankruptcy court agreed with Trustee and entered summary judgment in his favor. Short now appeals.

1

Short raises nineteen issues on appeal, which can be boiled down to the following areas of alleged error: the bankruptcy court (1) ignored evidence that the advances were loans; (2) incorrectly applied federal law instead of Michigan law when considering whether the advances were loans; (3) engaged in improper burden shifting; (4) failed to consider Short's affirmative defenses; and (5) considered issues not set forth in the final pretrial order submitted prior to the evidentiary hearing.

The considerable number of Short's arguments on appeal does not rescue them from their lack of merit. For the reasons that follow, the judgment of the bankruptcy court will be affirmed.

## BACKGROUND

The bankruptcy court provided a comprehensive recitation of the factual and procedural background of the case in its opinion following the evidentiary hearing. Adv. P. No. 16-5125, ECF No. 199. The following summary is taken largely from that opinion.

It is undisputed that Debtor was formed in 2008 to acquire the assets of Pontiac General Hospital. Debtor's members, who at the time consisted of approximately 45 physicians and McLaren Health Care ("McLaren"), invested millions of dollars into Debtor. In 2010, McLaren disassociated itself from the hospital and demanded repayment of its secured loan. The member-physicians made advances to Debtor to enable it to pay off the debt owed to McLaren and to later finance Debtor's revival.

At all relevant times, Short, a practicing psychiatrist, was a member on the board of directors of Debtor. Debtor's operating agreement reflects that Short made a capital contribution to Debtor in the amount of $250,000.00 on or about June 1, 2009 in exchange for 50 "Class B" membership units. Short was one of approximately 42 members in Debtor as of June 1, 2009. Short maintained a private practice at an office outside of the hospital as well as provided inpatient services at the hospital.

Despite the member-physician efforts to revive Debtor, Debtor suffered losses between 2010 and 2015 and required continued cash advances from its members in order to continue its operations. Between November 1, 2011 and July 1, 2015, Short made 20 advances to Debtor totaling $1,632,333.34. From April 1, 2013 to July 17, 2015, Debtor transferred $571,939.44 back to Short. The dates and amounts of the advances and transfers to Short are reflected in a chart in the bankruptcy court's opinion. *Id.* at PageID.5.

The advances were not enough to sustain Debtor. On July 22, 2015, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On August 24, 2016, Short filed a proof of claim in the amount of $952,377.80 for "monies loaned." There were no supporting documents attached to the claim. On October 28, 2016, Trustee objected to the claim. Trustee brought this avoidance action shortly thereafter. Trustee's second amended complaint against Short contained seven counts:

3

- Count I – Claim for Re-Characterization of any Advances by Defendant;

- Count II – Preferential Transfers under 11 U.S.C. §§ 547(b), 550(a) and 551;

- Count III – Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550 and 551;

- Count IV – Avoidance of Fraudulent Transfers under Michigan's Uniform Fraudulent Transfer Act, M.C.L. §§ 566.31 et seq1 , and 11 U.S.C. §§ 544(b) and 550;

- Count V – Breach of Statutory Duties to Act in Good Faith and in the Best Interests of the Company;

- Count VI – Equitable Subordination of Claims; and

- Count VII – Claim Disallowance under 11 U.S.C. §502(d).

Adv. P., ECF No. 145. The bankruptcy court entered summary judgment in favor of Trustee on Count II, finding Debtor's transfers to Short preferential. Adv. P., ECF No. 122. The bankruptcy court then held an evidentiary hearing on the limited issue of whether the advances were capital contributions or loans, noting that both parties agreed such a hearing would resolve the remaining claims before the court. *See* Adv. P., ECF No. 220. In the opinion after the hearing, the bankruptcy court determined that all but two of Short's advances were capital contributions and not loans. Adv. P., ECF No. 199.

After the hearing, Trustee moved for summary judgment on Counts I, III, IV, VI and VII. Adv. P., ECF No. 216. The bankruptcy court recharacterized the advances as capital contributions and not loans pursuant to the opinion after the hearing and granted summary judgment in favor of Trustee on Count I. Adv. P., ECF No. 214. The bankruptcy court further found that because Debtor was under no obligation to repay Short for the capital contributions, Debtor's transfers to Short preceding the bankruptcy petition were fraudulent and could be avoided and recovered by Trustee. *Id.* Accordingly, the bankruptcy court also granted summary judgment in favor of Trustee on Counts III, IV, and VII, but dismissed Counts V and VI. *Id.*; Adv. P., ECF No. 233. Short's appeal followed.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Mathews (In re Mathews),* 209 B.R. 218, 219 (6th Cir. B.A.P. 1997) (internal quotations omitted). The bankruptcy court's conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall),* 599 F.3d 498, 501 (6th Cir. 2010). This means the Court independently reviews the law and gives no deference to the conclusions of the

5

bankruptcy court. *Myers v. IRS (In re Myers),* 216 B.R. 402, 403 (6th Cir. BAP 1998). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 88 (6th Cir.1993). *See also In re Shefa, LLC,* 535 B.R. 165, 169 (E.D. Mich. 2015).

## DISCUSSION

### A. Evidence of the loans

Short argues the bankruptcy court abused its discretion by discrediting or ignoring evidence that the advances were loans. On September 25 and 26, 2018, the bankruptcy court held a hearing to hear evidence on this limited issue. At the conclusion of the hearing, the bankruptcy court found that the two advances evidenced by signed, executed promissory notes were loans. The remaining advances were found to be capital contributions. *See* Adv. P., ECF No. 199. Short now claims this was error.

First, Short argues the bankruptcy court erred by failing to authenticate, under Federal Rule of Evidence 901, certain unsigned promissory notes produced before the hearing by Trustee. The bankruptcy court admitted the unsigned notes for a limited purpose, to establish the advances were made, but not to show the unsigned notes were authenticated and executed. Adv. P., ECF No. 199, PageID.19.

6

Short argues this was insufficient and the notes should have been authenticated.

Federal Rule of Evidence 901 requires only that courts admit evidence if sufficient proof has been introduced so that a reasonable fact finder could find in favor of authenticity or identification. *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997). Before the court can admit any evidence for consideration, "the proponent must produce sufficient evidence to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Short argues he provided sufficient proof of the unsigned notes' authenticity. First, he says the Trustee's production of the unsigned notes alone was sufficient to authenticate them. ECF No. 19, PageID.6238. Next, Short points to his own testimony that the notes were prepared by the secretaries of the CEO or CFO. Short further testified that there was always a promissory note prepared to evidence the loans made by him, and by the other doctors, to the hospital. Short says he identified the persons whose names appeared on the signature lines, and that the notes had distinctive characteristics. *Id.*

The bankruptcy court found this was not sufficient to authenticate the notes. First, the notes were unsigned, so they carry less weight than signed notes. *See Universal Inv. Corp. v. Stephens P'ship*, 2017 WL 104385, 895 N.W.2d 854 (Wis. Ct. App. Jan. 10, 2017) (emphasis in original) ("Even if we were to assume the purported copy of the note the

circuit court reviewed was sufficiently authenticated, the copy of the note was *unsigned*. Therefore, the circuit court improperly considered it[.]") Next, Short did not create the notes, was not present when the notes were created, and was not a custodian of the notes. Adv. P., ECF No. 199, PageID.19. He did not know who prepared the notes or when they were prepared. *Id.* While Short testified that the notes were prepared "by the secretaries of the CEO or CFO", he failed to identify the secretaries, the CEO and/or the CFO. *Id.* Thus, given his lack of first-hand knowledge about the notes, it was not an abuse of discretion for the bankruptcy court to decline to authenticate them.

Moreover, even if the bankruptcy court did abuse its discretion, such an error in an evidentiary ruling would merit reversal only if it affected the outcome of the trial. *United States v. Farrad*, 895 F.3d 859, 875 (6th Cir. 2018). Short does not point to any improper outcome at the hearing as a result of the fact that the notes were not found to be authenticated. Indeed, a finding of authentication would have had little if any effect on the outcome because there was no evidence that the notes had been executed.

Short argues the bankruptcy court erred by ignoring evidence that the unsigned notes and missing notes had been executed. Despite not being able to produce the corresponding signed copies of the notes, Short argues his own testimony was enough to show the signed copies existed, and this was sufficient to support a conclusion that the unsigned copies

or missing copies had been executed. ECF No. 19, PageID.6240. Specifically, Short testified that it was his practice to provide his accountant with copies of the promissory notes he received from Debtor. *Id*. In addition, Short said Debtor kept the signed copies in a folder that somehow "disappeared," and for this reason it was not possible to produce any copies of the signed notes. ECF No. 19, PageID.6242. Short also points to the testimony of Dr. Singhal, another member of Debtor and a defendant in a companion case, who also testified that there were copies of signed notes for each of the advances.

However, the bankruptcy court was not required to accept Short's self-serving statements without additional corroboration for the purpose of proving the notes were executed. *See In re Premo*, 116 B.R. 515 (Bankr. E.D. Mich. 1990); *Verplatse v. Verplatse*, 477 N.E.2d 648 (Oh. Ct. App. 1984) (trial court did not abuse its discretion in disregarding husband's self-serving testimony of alleged debt related to bankruptcy when the claim was not substantiated by the record). Thus, the Court finds no error.

As additional support that the notes were executed, Short points to the testimony of Marsha Feighner, who Debtor hired as a controller in 2015. Feighner testified that "she had been told" by Dr. Singhal's secretary that the secretary kept all of the signed copies of the notes that would have matched up with the unsigned copies. Adv. P., ECF No. 199, PageID.19. Singhal's secretary did not testify at trial, so there was no

testimony to corroborate that statement. Because Feighner's testimony is hearsay, the bankruptcy judge was not required to accept it as evidence that the notes had been executed. *See United States Fire Ins. Co. v. City of Warren*, No. 10-CV-13128, 2012 WL 13006156, at *2 (E.D. Mich. June 12, 2012) (hearsay statements not sufficient to authenticate a document). Accordingly, there is no error on this point.

In addition, Short argues that the bankruptcy court's conclusion that there was no evidence regarding the terms for the advances was error. Short points to a loan summary produced by Debtor before the hearing as evidence that the terms of the loans were established. However, as the bankruptcy court found, the loan summary carried little probative value as to the terms of the advances. The loan summary was created by Feighner after the time of the transactions at issue in an attempt to recreate the Debtor's financial record. Adv. P., ECF No. 199, PageID.11. It was not simultaneously maintained when Short made the advances. *Id.* Further, Feighner used copies of the unsigned notes to complete the loan summary, so the loan summary is not evidence that the unsigned notes were executed pursuant to those terms. The bankruptcy court also found that the loan summary was missing certain notes and that some of the notes were recorded incorrectly. *Id.*

Short does not provide any evidence to support his position that the loan summary should have carried more evidentiary weight than it did. Instead, he argues that he should not be punished for the Debtor's failure

10

to produce an accurate loan summary during the hearing. ECF No. 19, PageID.6244. But this argument overlooks the fact that Short himself could have kept copies of the signed notes but failed to do so. Had he kept copies of the signed notes, as he said was his practice, the terms of the advances would have been clear, the notes would have been easily authenticated, and proof of their execution complete. The bankruptcy court properly found that the loan summary was not probable evidence of the terms of the advances, and Short has not demonstrated that was error.

## B. Application of federal law (the *Roth Steel* factors)

In addition to the evidence the parties provided, the bankruptcy court considered the *Roth Steel* factors set forth by the Sixth Circuit to assess whether the advances were loans or capital contributions, *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625 (6th Cir. 1986), and accordingly, whether the transfers constituted reasonably equivalent value as is required for the transfers to be valid. *See* U.S.C. § 548(a)(1)(B). Short argues the bankruptcy court incorrectly applied federal law when it utilized the *Roth Steel* factors and instead should have applied Michigan contract law, which looks to the intent of the parties to determine the meaning of the contract. ECF No. 19, PageID.6230-31.

But the bankruptcy court did apply Michigan contract law. In analyzing the promissory notes, the court found that the two signed and executed promissory notes were unambiguous, and therefore the parties

11

were "bound by the four corners of the notes." Adv. P., ECF No. 199, PageID.42. Because the signed notes evidenced a definite, unconditional obligation of repayment, the court found they evidenced a loan agreement. *Id.*

Next, the bankruptcy court applied Michigan contract law and found the remaining unsigned notes did not evidence an agreement between the parties because there was no evidence before the court regarding the terms of those advances and accordingly, there was no credible evidence establishing an agreement of an unconditional promise to pay. *Id.* at PageID.43. Short argues on appeal that a finding of an unconditional promise to pay is not required to find the existence of a contract. Whether or not that is true of general contract law, the bankruptcy judge correctly articulated that under Michigan law an unconditional promise to repay is required to evidence a loan agreement. *See People v. Lee*, 447 Mich. 552, 559 (1994) (internal citations omitted) ("The word 'loan' implies an advance of money with an absolute promise to repay."). Therefore, the bankruptcy judge properly applied Michigan contract law and determined only two of the advances were loans.

As a separate basis for proving that the transfers from Debtor to Short were capital contributions, Trustee relied on the *Roth Steel* factors as recently articulated in *In re AutoStyle Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001). In addition to his contention that Michigan law should govern, Short argues this was improper because the holding in *Roth Steel* has

been rejected by two courts of appeals, the Fifth Circuit and the Ninth Circuit. Those circuits held that there is no specific provision of the Bankruptcy Code that allows courts to recharacterize claims, and therefore, it is beyond a bankruptcy court's power. *See, e.g., In re Pacific Express, Inc.,* 69 B.R. 112, 115 (9th Cir. BAP 1986).

Courts are split on whether a bankruptcy court can recharacterize a claim of debt as capital contributions. *AutoStyle Plastics*, 269 F.3d at 726. However, the Sixth Circuit stands with the majority of circuits and has held that a bankruptcy court may consider whether to recharacterize a claim of debt as equity pursuant to the bankruptcy court's equitable powers set forth in 11 U.S.C. § 105(a). *Id. at* 748; *see also* 28 No. 3 J. Bankr. L. & Prac. NL Art. 1.

Short is apparently asking the Court to break with the precedent of the Sixth Circuit to join the Fifth and Ninth Circuits, who Short believes got the analysis correct. This Court may not do so, as it is governed by the precedent of this Circuit's court of appeals. Therefore, Short's argument, that the application of the *Roth Steel* factors was improper, is rejected.

Short further contends that even if the bankruptcy court's application of the *Roth Steel* factors was not improper, it analyzed them incorrectly and wrongly concluded the advances were capital contributions and not loans. The question of whether advances to a corporation constitute capital contributions or loans is a question of fact

13

and is therefore reviewable under a clearly erroneous standard. *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625 (6th Cir. 1986).

The Court finds no clear errors in the bankruptcy court's application of the eleven *Roth Steel* factors. The bankruptcy judge thoroughly analyzed each factor, citing to the record throughout. Nevertheless, the Court will briefly address each factor.

The first factor considers the names given to the instruments. Short argues that the bankruptcy court erred in finding this factor weighed in favor of the advances being capital contributions because the loans were titled as "loans" on the Debtor's documents. This, alone, does little to persuade the Court that the advances were loans and not capital contributions. *See id*. at 631 ("The entry of the advances as loans on the accounting records of both entities provides little if any support for a finding of bona fide debt."). Additionally, Short and Dr. Singhal gave a plausible explanation why the advances may have been so titled. Both testified that the doctors were prohibited by law from adding to their membership units, and as such, they were prohibited by law from recording the advances as capital contributions. Adv. P., ECF No. 199, PageID.9. Recording the advances as loans would avoid being in conflict with this rule while allowing the doctors to make financial contributions to the hospital. Thus, Short's argument is not persuasive.

The second factor is the presence or absence of a fixed maturity date and schedule of payments. "The absence of a fixed maturity date and a

fixed obligation to repay is an indication that the advances were capital contributions and not loans." *Roth Steel*, 800 F.2d at 631. The bankruptcy court properly found that there was no evidence of a fixed maturity date or obligation to repay with respect to the unsigned notes. Short argues that the bankruptcy court "arbitrarily" disregarded the maturity date and interest rates on the unsigned notes as evidence of a promise to repay. However, the evidence before the bankruptcy court also showed that listed dates passed without Short seeking to collect. A listed maturity date and a requirement that interest be paid are not indicative of a loan if neither are enforced. *See Roth Steel*, 800 F.2d at 631. Accordingly, Short's argument is without merit.

Similarly, the third factor is the presence or absence of a fixed rate of interest and interest payments. The bankruptcy court found that although there was some evidence Short received interest payments, he could not correlate those payments to any of the advances. Short argues the bankruptcy court abused its discretion because the evidence showed that Short did receive some interest payments, as reflected in the Debtor's records and Short's tax returns. However, as the bankruptcy court noted, although the loan summary indicates an interest payment in the amount of $11,932.00 was made to Short on December 1, 2014, Short only declared interest payments in the amount of $833.00 on his 2014 tax return. Adv. P., ECF No. 199, PageID.46. Furthermore, Short had no way of keeping track of interest payments, as there was no

amortization schedule. Based on these findings of fact, the bankruptcy court did not abuse its discretion by deciding this factor weighed in favor of the advances being loans.

The fourth factor examines the source of the repayments. "If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution." *AutoStyle Plastics,* 269 F.3d at 751. The bankruptcy court found that the repayment of Short's advances depended on the Debtor's ability to repay all doctors, weighing in favor of the advances being capital contributions. Short argues there was no evidence that the source of his repayments was to be solely from profits, so the bankruptcy court's finding was incorrect.

First, Short's argument relies on slightly misstating the legal principle. The repayment need not necessarily be solely from profits, but rather, the expectation of repayment must depend on the success of the borrower's business. *Id.* Short's own testimony confirms this was so. He testified that "[the doctors] expected that when the hospital was capable of making payments, whether it be capital returns or interest returns and it had the funds available for it, that it would do so." ECF No. 184, PageID.81. He makes a stronger statement in a 2015 affidavit connected with a state court case: "[W]e all knew and understood that Doctors' Hospital did not have funds to repay notes on demand. When the three of us gave the hospital our personal funds to meet expenses, we knew and

16

understood that in 30 days' times, 45 days' time, or one year, the hospital would likely not have available funds to repay us. [W]e agreed amongst ourselves and with [Debtor] that we would not demand repayment until [Debtor] was financially strong and capable of repaying all investors, or until there was a sale of the hospital that might generate cash[.]" ECF No. 13-7, PageID.5530. Thus, it is clear from the record that Short understood he would be repaid depending on Debtor's financial stability.

The fifth factor focuses on the adequacy or inadequacy of capitalization. "Thin or inadequate capitalization is strong evidence that the advances are capital contributions rather than loans." *AutoStyle Plastics,* 269 F.3d at 751. Short argues there was no evidence that the Debtor was undercapitalized. In fact, he says, Debtor was able to successfully reorganize under Chapter 11. ECF No. 19, PageID.6271. However, capitalization is to be assessed initially, when "a corporation is started by the shareholders with a minimal amount of capital who then make a large loan of money to the newly formed corporation[,]" and also at the time when the transfers are made. *Id.* Thus, the Debtor's ability to reorganize is irrelevant to the analysis. Finally, it is undisputed that the doctors were the only source of short term financing the Debtor was receiving. Adv. P., ECF No. 199, PageID.47. Therefore, the bankruptcy court properly found that undercapitalization weighed in favor of concluding that the advances were capital contributions.

17

The bankruptcy court found for Short on the sixth factor, which focuses on the identity of interest between the creditor and stockholder. "If stockholders make advances in proportion to their respective stock ownership, an equity contribution is indicated." *AutoStyle Plastics,* 269 F.3d at 751. On the other hand, a sharply disproportionate ratio between a stockholder's percentage interest in stock and debt is indicative of bona fide debt. *Id.* The bankruptcy court found that while the three largest shareholders advanced most of the money, their advances were not in direct proportion to their shares, so this factor weighed in favor of the advances being debt.

Nevertheless, although the bankruptcy court found in Short's favor on this factor, he takes issue with this finding. He argues, without citing any caselaw, that this single factor should have dominated the analysis. However, "no one factor is controlling or decisive" in the *Roth Steel* analysis, and the bankruptcy court did not err in considering each factor equally against the facts of the case. *See Roth Steel,* 800 F.2d at 630.

The seventh factor considers whether there was any security for the advances. "The absence of a security for an advance is a strong indication that the advances were capital contributions rather than loans." *AutoStyle Plastics,* 269 F.3d at 752. Short acknowledges he did not secure the advances, but that was because he believed federal law prohibited the Debtor from granting a security interest. As the bankruptcy court noted, merely citing to "federal law" is insufficient to evoke this principal.

18

Adv. P., ECF No. 199, PageID.48. Further, regardless of the doctors' understanding, the fact remains that the advances were not secured. Short does not dispute that. Accordingly, there was no error.

The eighth factor focuses on the corporation's ability to obtain outside financing. Short does not mount a legal argument with respect to this factor, so the Court will not consider it. *See Sunseri v. Proctor*, 461 F. Supp. 2d 551, 573 (E.D. Mich. 2006) ("The Court need not consider arguments raised in a perfunctory manner, unaccompanied by some effort at developed argumentation.")

The ninth factor examines the extent to which the advances were subordinated to the claims of outside creditors. "Subordination of advances to claims of all other creditors indicates that the advances were capital contributions and not loans." *AutoStyle Plastics,* 269 F.3d at 752. In Short's 2015 affidavit in connection with the state court case, he states "[the doctors] and I agreed amongst ourselves and with [Debtor] that we would not demand repayment until [Debtor] was financially strong and capable of repaying all investors[.]" ECF No. 13-7, PageID.5530. Short now argues that because the state court rejected that argument, his statements are essentially retracted. That logic is not persuasive. Short's affidavit indicates his understanding that he would not be repaid until the other investors were repaid. In addition, as the bankruptcy court noted, his testimony at the hearing indicates his understanding that he would not be repaid until the Debtor was in stable financial condition.

Adv. P., ECF No. 199, PageID.24-25. Accordingly, the Court finds no error with the bankruptcy court's finding on this factor.

Short does not mount an argument with regard to the tenth factor, which evaluates the extent to which the advances were used to acquire capital assets, because the bankruptcy court found that this factor weighed in favor of the advances being loans.

Finally, the eleventh factor considers the presence or absence of a sinking fund to provide repayments. "The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans." *AutoStyle Plastics, Inc.*, 269 F.3d at 752. Short only argues that this factor is irrelevant under Michigan law because the *Roth Steel* factors are inapplicable to the analysis. However, as discussed above, the bankruptcy court did not err in applying the Sixth Circuit's *Roth Steel* factors, so this argument is rejected.

## C. Burden shifting

Short argues the bankruptcy court engaged in improper burden shifting with respect to Count III of Trustee's complaint, avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 548 for the two-year period preceding the filing of the Debtor's bankruptcy case. Section 548(a)(1)(B) of Title 11 of the United States Code provides, in pertinent part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or

20

within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

The parties agree Debtor was insolvent at the time the transfers occurred, so the only relevant element on appeal is whether Debtor received "reasonably equivalent value" in exchange for the transfers. The Bankruptcy Code does not define "reasonably equivalent value," but defines "value" for the purpose of determining whether a transfer is fraudulent as "property, or satisfaction or securing of a present or antecedent debt of the debtor[.]" § 548(d)(2)(A). Thus, payment of a pre-existing debt constitutes value.

In the adversary proceeding, Trustee argued Debtor did not receive reasonably equivalent value for the transfers because Debtor did not owe Short any debt when it made the transfers to him. Short countered that Debtor did receive reasonably equivalent value because Debtor owed him debt from the loans, and the transfers were simply repayment of that debt. The bankruptcy court determined that the advances were not loans, and as a result, the transfers to Short were fraudulent because Debtor did not receive reasonably equivalent value. Adv. P., ECF No. 241, PageID.16. On appeal, Short argues this was error because instead of

21

requiring the Trustee to prove each element of his fraudulent transfer claim, the bankruptcy court improperly shifted the burden to Short to show why the transfers were not fraudulent.

Short is incorrect for the following reasons. In satisfying his burden on the fraudulent transfer claim, Trustee pointed to the lack of evidence supporting Short's claim that the advances were loans, and accordingly, the transfers were not made on account of antecedent debt. Specifically, Trustee proffered: (1) Short only produced two signed promissory notes; (2) Short did not know if the notes were repaid; (3) Short did not have a way of tracking interest; and (4) neither Short nor Debtor's two controllers could correlate any of the transfers to any of the advances. *See* Adv. P., ECF No. 199, PageID.36.

A movant may point to a lack of evidence in the non-movant's case to carry its burden on summary judgment. If the non-movant does not provide evidence in response, summary judgment may be granted for the moving party. *In re Wallace's Bookstores, Inc.*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004). Short did not sufficiently rebut the evidence relied upon by the Trustee, and the bankruptcy court properly granted summary judgment its favor. Accordingly, the bankruptcy court did not engage in burden shifting. Rather, the bankruptcy judge properly pointed out that Trustee had established his burden by showing there was no credible evidence in the record that Debtor received reasonably equivalent value in exchange for the transfers because the transfers were not on account

22

of antecedent debt. *Id.* Consequently, The bankruptcy court did not engage in burden-shifting.

### D. Affirmative defenses

Short also argues that the bankruptcy court failed to consider his affirmative defenses, resulting in erroneous rulings in favor of the Trustee. Short says he successfully mounted several defenses. First, that the loans and transfers were made either in the ordinary course of business between the parties (a subjective standard), or made according to ordinary business terms (an objective standard), and therefore the transfers should not be avoided and recovered by Trustee. In the alternative, Short argues, if the bankruptcy court is correct and the advances are capital contributions, he is entitled to that money back because both parties were mistaken about the terms of the advances. For the reasons that follow, his arguments are not well taken.

### a. Ordinary course of business between the parties

Count II of Trustee's Complaint sought to avoid and recover, pursuant to 11 U.S.C. §547, three transfers in the cumulative amount of $100,000.00 made by the Debtor to Short within ninety days preceding the Debtor's bankruptcy filing. Adv. P., ECF No. 145. Trustee and Short filed cross motions for partial summary judgment on Count II. The bankruptcy court granted Trustee's motion as to Count II in the amount of $100,000.00 and denied Short's motion. Adv. P., ECF No. 122. Both parties agreed the Trustee met the elements of a preferential transfer

under § 547(b), (*Id*.), but Short argued the bankruptcy judge erred in finding that the transfers were not conducted in the "ordinary course of business", an affirmative defense under § 547(c)(2). Section 547(c)(2) sets forth which transfers are conducted in the ordinary course of business. It provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and  the transferee, and such transfer was
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms[.]

Accordingly, to meet his burden under § 547(c)(2), Short had to prove both elements: (1) that the debt paid by the transfers was a debt incurred by the Debtor in the "ordinary course of business or financial affairs" of the Debtor and the Short; and (2) the transfers were either (A) "made in the ordinary course of business or financial affairs" of the Debtor and Short, or (B) made according to "ordinary business terms." The bankruptcy court held that there was a material question of fact as to the first element, so only the second element is relevant on appeal.

Short limited his argument to the application of § 547(c)(2)(A), which involves a subjective inquiry into the parties' dealings to assess

24

whether the transfer was made in the ordinary course of business between the parties. *See* ECF Nos. 89-3, 90-1. In this inquiry, the court considers: (1) any changes in the timing of the payments; (2) any change in the method of payment; (3) unusual collection activity during the preference period; and (4) unusual amounts of payments. *In re Am. Camshaft Specialties, Inc.,* 444 B.R. 347, 354 (Bankr. E.D. Mich. 2011). The first and most important factor is any changes in the timing of the payments. *Id.* The court must look at the payments made in the preferential period and compare them to past practices of the parties. Here, the bankruptcy court considered the past practices between the parties and stated:

> "[T]he Court is unable to make a comparison because the Defendant failed to establish the parties' past practice with respect to the terms of repayment of the loans. In support of his position, Defendant pointed to copies of unsigned promissory notes, the Loan Summary, one signed promissory note (which is an on demand note with no maturity date) and Exhibits A and B to Plaintiff's amended complaint. However, Defendant failed to link the past repayments to their respective loans to demonstrate the repayment history. None of the evidence relied on by the Defendant is helpful on this point. [B]y way of example, exhibits A and B to Plaintiff's amended complaint merely show a list of loans by date issued and a separate list of repayments listed by the repayment date. There is no information given that would reflect what the repayment amounts are for or to which loan they correlate[.] It is impossible for the Court to ascertain the average time frame of repayment for these parties. In fact, some of the loans have not been repaid."

Adv. P., ECF No. 135, PageID.24- 25. As such, the bankruptcy court held that the evidence offered by Short failed to establish that the loans were repaid according to the "ordinary course of business" of the parties.

On appeal, Short contends that Trustee simply argued that his establishment of the elements of § 547(b) would defeat any defenses under § 547(c), instead of actually dismantling Short's affirmative defense. This is the same argument Short made in his unsuccessful motion for reconsideration on this issue. Adv. P., ECF No. 125-1. The Court finds the argument unpersuasive.

A trustee challenging the legal sufficiency of an affirmative defense, on which the defendant bears the burden of proof at trial, "may satisfy its Rule 56 burden by showing "that there is an absence of evidence to support [an essential element of] the [non-moving party's] case[.]" *Wallace's Bookstores,* 316 B.R. at 263. Conversely, "[w]hen relying on an affirmative defense, a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment. That burden requires that the nonmoving party with the burden of proof on the issue in question produce sufficient evidence upon which a jury could return a verdict favorable to the nonmoving party[.]" *Id.* In carrying his burden on summary judgment, Trustee provided the following information to negate Short's affirmative defense:

- Short provided no evidence of an obligation by Debtor to repay Short, specifically pointing out that there was no evidence regarding the terms of the loans. Adv. P., ECF No. 80, PageID.12-13.

- Trustee emphasized that Short could not state any specific terms for repayment and had not kept any of the promissory notes. *Id.*

- Trustee pointed to Short's declaration wherein he stated "I did not make decisions on the Debtor as to when and in what amounts loan repayments would be made to me or anyone else. Rather the Debtor's administrative staff, which was headed by the Debtor's CEO, managed the Debtor's finances and made those determinations." *Id.*

- Trustee additionally relied on Dr. Singhal's deposition, in which he "testified that any payments to Defendant or the other Board members were optional. . . . 'It was not just that if anybody wants to get their money back, they'll get it. It will be discussed with CEO, CFO and the other board members.'" *Id.* at 5-6.

The bankruptcy court found that Trustee's arguments were sufficient to demonstrate that the second element of Short's affirmative defense—that the transfers were made in the "ordinary course of business" between the parties—was lacking. Trustee supported his motion by citing to and challenging the sufficiency of the evidence offered by Short. Accordingly, the bankruptcy court held, "The burden of proof

thus shifted to Defendant to produce sufficient evidence upon which a jury could return a verdict favorable to him." Adv. P., ECF No. 153, PageID.16-17.

The evidence Short provided in response was insufficient. First, Short points to his own testimony about how it was routine for doctors to make loans that operated as his did. However, that evidence does not refute Trustee's allegations as to the second element of Short's affirmative defense. Rather, it goes to the first element of Short's defense because it relates to the loans and not the transfers. Since the bankruptcy court held that there was a genuine issue of material fact as to the first element, this does not help Short.

Next, Short argues that because the 2015 loan was a short-term loan and was repaid precisely as agreed, repayment of the loan was made in the ordinary course of business between the parties. This evidence likewise is insufficient to create an issue of fact on the second element of his defense. First, as explained above, the loan summary and unsigned promissory notes do not evidence the terms of repayment. The bankruptcy court properly determined that the loan summary was of limited probative value to establish the advances were loans because the summary was not simultaneously maintained at the time of the transactions by an individual with firsthand knowledge. Adv. P., ECF No. 199, PageID.12. Additionally, the bankruptcy court did not err by holding the unsigned promissory notes did not suffice as evidence of

28

repayment. Short did not create the notes, was not present when the notes were created, and was not a custodian of the notes. Adv. P., ECF No. 199, PageID.19. In sum, the bankruptcy judge properly determined the unsigned notes were not evidence of the terms of the advances.

Moreover, even if the 2015 loan was a short-term loan made for a specific business purpose and paid as agreed, as Short maintains, that does not mean it was paid according to ordinary business terms between the parties. Without evidence of prior dealings, Short's affirmative defense under the subjective test falls short.

### b. Ordinary business terms

Short argues that even if he is not entitled to summary judgment under the subjective part of § 547(c)(2)(A) of the Bankruptcy Code, he is independently entitled to summary judgment under the objective component of § 547(c)(2)(B) because the payments sought to be avoided by the Trustee were all made according to ordinary business terms. *See In re Am. Camshaft Specialties, Inc.*, 444 B.R. 347, 364 (Bankr. E.D. Mich. 2011).

The bankruptcy court rejected this argument, finding that it was waived because Short asserted this defense for the first time in his motion for reconsideration. Adv. P., ECF No.153, PageID.17. However, even if Short did not waive the defense, he does not provide the Court

with any analysis as to why he should prevail on the objective test—he merely argues he did not waive it. He provides no factual support for why the transfers comported with industry standards, no industry figures, no expert testimony, no testimony of Debtor's employees that could explain Debtor's practice is in line with what other hospitals do— not even his own testimony to provide the same. *See Matter of Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir. 1995). Therefore, even if Short has not waived the argument, there is no legal analysis before the Court with respect to the objective test. Therefore, the Court will not consider it.

### c. Mutual mistake

Even if the bankruptcy court is correct, Short argues, and the advances are capital contributions and not loans, Short is entitled to that money back because there was no "meeting of the minds" and thus any agreement for capital contributions is void. ECF No. 19, PageID.6257. Short says that both the Debtor and Short believed that the transactions were loans and treated them as such. If the bankruptcy court's ruling means that the parties were mistaken, Short claims he is entitled to rescission of the contract.

Federal Rule of Civil Procedure 8(c) requires that a responsive pleading set forth any enumerated affirmative defenses as well as any other matter constituting an avoidance or affirmative defense. As the bankruptcy judge correctly pointed out, Short did not plead mutual mistake in his answer to the second amended complaint, so that defense

is waived. *See Omega Const. Co. v. Murray,* 129 Mich. App. 509, 516, 341 N.W.2d 535, 539 (1983).

However, the bankruptcy court nevertheless considered the defense on the merits and found no evidence that the Debtor treated the advances as loans. ECF No. 241, PageID.14. As discussed above, Debtor had no way to identify the particular loan being repaid. Accordingly, it had no way to track the interest rate to be applied to the repayment, accrued interest, or how to assess late fees. Furthermore, there is a plausible alternative reason that the advances were recorded as loans. As Short testified, the doctors were prohibited by law from adding to their membership units. Consequently, they could not record the advances as capital contributions, but recording them as loans would have allowed the advances to be recorded without violating this rule. There is no evidence of a mistake on the part of both parties that would warrant any contract for capital contributions be rescinded.

### E.  The final pretrial order

Short argues throughout his brief that the bankruptcy court improperly considered facts, issues, and caselaw not presented in the final pretrial order. He includes this as a prelude to many of the arguments he makes. Given that this argument consistently appears throughout the seventy-seven-page brief, the Court will consider only those instances where Short presents a developed argument rather than repeating a conclusory statement.

First, Short says that the issue of whether the loans had indefinite terms was not set forth in the final pretrial order, so it was improper for the Trustee to raise the point. However, the Trustee included the following language in the final pretrial order: "Why do the unsigned promissory notes lack the characteristics of an enforceable loan document, including (a) a specified interest rate, (b) a repayment schedule, (c) a maturity date?" Adv. P., ECF No. 175, PageID.8. This language is sufficient to put Short on notice of Trustee's argument that the loans did not include definite terms.

Short also argues that the bankruptcy judge improperly utilized the *Roth Steel* factors for recharacterization because *Roth Steel* was not mentioned in the final pretrial order as an issue of fact or law. However, the characterization of the advances was a major part of the litigation, if not the single most important issue. As such, the final pretrial order covers this issue: "In the absence of fully executed promissory notes, can Dr. Short enforce the concept that his advances should be treated by the bankruptcy court as loans rather than capital contributions?" *Id.*

Moreover, a judge is not required to set forth in the final pretrial order any potential caselaw or legal rationale she may rely on. A final pretrial order binds the *parties* as to what arguments they may present at trial—it does not control how a judge may analyze and decide issues presented. *See* Fed. R. Civ. P. 16; *McKinney v. Galvin*, 701 F.2d 584, 586 (6th Cir. 1983). Accordingly, the bankruptcy court did not act improperly

by considering caselaw or legal analysis not explicitly listed in the pretrial order.

Finally, Short lists a number of other "issues" that the bankruptcy judge improperly considered: (1) whether the Debtor had set up amortization schedules (2) whether the Debtor had other means to calculate and track interest accruals and interest payments, (3) whether the Trustee's witnesses had been able to match payments to particular notes, (4) whether and why money was paid to the Debtor for "Class E" shares that were never issued, (5) whether the nature of the advances was evidenced by a "public document", (6) whether the terms of the loans as reflected in the Loan Summary were corroborated from an independent source[,]" etc. *See* ECF No. 19, PageID.6266. He argues the bankruptcy court should not have considered any of the foregoing because those "issues" were not identified in the final pretrial order. However, Short is mistaken on the guiding scope of a pretrial order.

The list Short provides is a combination of certain facts proffered throughout trial and briefing and certain sub-issues that were set forth in the final pretrial order. *See* Adv. P., ECF No. 175. Nothing Short lists was outside the scope of the issues the parties articulated. Moreover, Trustee was under no obligation to provide Short with every fact he wished to use in support of his case. "Pre-trial procedure may not be turned into a device by which a litigant can make use of his opponent's preparation for trial and by which one may be compelled to reveal to his

opponent facts on which his defense or cause of action is based." *Berger v. Brannan*, 172 F.2d 241 (10th Cir. 1949). Short has no reason to challenge the facts considered during litigation on this ground.

## F. Arguments waived

Short makes two addition arguments: (1) there was no fraudulent transfer (ECF No. 19, PageID.6274); and (2) the bankruptcy court improperly denied Short's fourth motion for summary judgment (*Id.* at PageID.6275). But these sections of Short's brief consist of largely conclusory statements with little or no analysis. Accordingly, the Court will not address them. *See* Fed. R. Bankr. P. 8013 (an appeal "must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it."); *Sunseri v. Proctor*, 461 F. Supp. 2d 551, 573 (E.D. Mich. 2006) ("The Court need not consider arguments raised in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

## CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court is **AFFIRMED**.

Dated: July 22, 2020          s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE